**Jane DOE, Plaintiff,**

v.

**CALUMET CITY, ILLINOIS, et al., Defendants.**

**No. 87 C 3594.**

United States District Court,
N.D. Illinois, E.D.

Sept. 19, 1989.

On Motion For Reconsideration
Sept. 22, 1989.

Kenneth N. Flaxman, Elizabeth Dale, Chicago, Ill., for plaintiff.

Alan J. Brinkmeier, Craig A. Chapello, Pretzel & Stouffer, Chartered, Gregory E. Rogus, LeRoy A. Garr & Associates, Chicago, Ill., for defendants.

## MEMORANDUM OPINION
## AND ORDER

SHADUR, District Judge.

This 42 U.S.C. § 1983 ("Section 1983") action, challenging the constitutionality of the strip-search policy of Calumet City, was converted from an individual action by plaintiff Jane Doe under her April 17, 1987 Complaint to a class action by Doe under her September 4, 1987 First Amended Complaint (the "Amended Complaint"). This Court promptly (on October 1, 1987) certified the class, but with a hedge: In light of this Court's view that a five-year statute of limitations applied to Illinois-based Section 1983 actions (then an unsettled question), the opening class date was fixed at April 17, 1982 but the notice to class members approved by this Court and sent December 15, 1987 stated in part (emphasis in original):[1]

> On October 1, 1987, United States District Judge Milton Shadur ordered that the case could proceed as a class action for all women who had been arrested on a misdemeanor or ordinance violation charge in Calumet City, Illinois after April 16, 1982. *Further proceedings in the case may limit the class to women who were arrested after September 4, 1985.*

Now our Court of Appeals has confirmed the Section 1983 limitation period is two years rather than five (*Kalimara v. Illinois Department of Corrections*, 879 F.2d 276, 277 (7th Cir.1989)). That has brought to life the question whether the two years in this case should begin September 4, 1985 (that is, measured back from the filing date of the Amended Complaint in which Doe first expressly advanced a class-based claim) or April 17, 1985 (that is, measured back from the filing date of Doe's original individual Complaint). At this Court's request, the parties have briefed that issue.

For her part Doe relies on the relation-back concept of Fed.R.Civ.P. ("Rule") 15(c) as applied by our Court of Appeals in *Paskuly v. Marshall Field & Co.*, 646 F.2d 1210, 1211 (7th Cir.1981) (per curiam) (citations omitted):[2]

> In her amended complaint, plaintiff alleges that the claims of the class arose from the same employment practices from which her individual claim arose. The amended pleading therefore "relates back" to the date of the original pleading under Rule 15(c) of the Federal Rules of Civil Procedure, which preserves the amended complaint from operation of the 90–day limitations period of Title VII, 42 U.S.C. § 2000e–5(f).... We note that the original complaint alleged that defendant engaged in practices that discriminated against women because of their sex; the defendant was thereby on notice that it might be required to defend its employment practices from charges of class-based discrimination.

Defendants do not of course challenge *Paskuly*—instead they focus on an asserted distinction between the original complaint there and the one in this case, in which they say Doe's counsel did not put defendants on notice of the potential class claim later advanced in the Amended Complaint.

 That attempted deflection of the force of *Paskuly* is interesting, even ingenious, but not at all ultimately persuasive. Defendants do point out with total accuracy that original Complaint ¶ 3 referred to "a municipal policy relating to the strip search of females arrested for ordinance violations," whereas Amended Complaint ¶ 3 speaks more broadly of "a municipal policy relating to the strip search of females arrested for minor charges." Because of that difference, defendants urge (1) they had no reason to anticipate having to confront the broader claim at the outset and (2) indeed, Doe (an arrestee on an ordinance-violation charge) has no standing

---

1. See this Court's earlier opinion at 707 F.Supp. 343, 345 (N.D.Ill.1989) for a more extended quotation of the December 15, 1987 notice to class members.

2. Doe also adverts to this Court's less pointed (and of course less definitive) treatment of the relation-back issue in the class action context in

*Badillo v. Central Steel & Wire Co.*, 495 F.Supp. 299, 304 (N.D.Ill.1980), *aff'd* on another issue, 717 F.2d 1160 (7th Cir.1983). *Badillo* was in fact one of the decisions cited favorably by *Paskuly* in the paragraph quoted in the text of this opinion (indicated by ellipses).

to act as a class representative for persons arrested on misdemeanor charges.[3]

But an ingenious argument may regrettably be disingenuous as well—and this one certainly is. Defendants carefully ignore the allegations of Complaint ¶¶ 11–15 (emphasis added):

11. In 1986, the law was clearly established in the State of Illinois that, consistent with the Fourth Amendment to the Constitution of the United States, police officers could not conduct a strip search of *a person arrested on other than a felony charge* without, at a minimum, reasonable suspicion to believe that the person to be searched was concealing a weapon or a controlled substance.

12. At all times relevant herein, there was no basis on which a reasonable police officer could have had a reasonable suspicion that plaintiff was concealing a weapon or a controlled substance.

13. Defendant Calumet City has delegated to police officers, including defendant UNKNOWN FEMALE POLICE OFFICER, the final authority to conduct strip searches of *people arrested for non-felony charges* absent any basis to believe that the person to be searched was concealing a weapon or a controlled substance. In conducting the strip search described herein pursuant to this delegation of authority, defendant UNKNOWN FEMALE POLICE OFFICER acted as a policy maker for defendant Calumet City.

14. The existence of *the municipal policy referred to above* is evidenced by the fact that a female who was arrested with plaintiff and charged with having committed the same ordinance violation of being underage in a tavern was likewise subjected to a strip search following her arrest, absent any basis to believe that the person to be searched was concealing a weapon or a controlled substance.

15. *The above described municipal policy* is the result of the failure of

defendant Shutoski to promulgate, adopt, and enforce regulations to prevent *unconstitutional* strip searches, as specifically required by Illinois law.

Complaint ¶¶ 11–12 were repeated verbatim as Amended Complaint ¶¶ 11–12, and the allegations of Complaint ¶ 13 were carried forward into Amended Complaint ¶ 13—including most importantly the Amended Complaint's reliance on arrests "for non-felony charges" as what then became a class claim in so many words (Amended Complaint ¶ 18).

There is thus no way in which defendants can now say with any degree of credibility that they were unaware from the beginning that they were being tagged with a charge of unconstitutional strip searches *in non-felony cases*. Because the dividing line in constitutional terms was expressly framed in the original Complaint as one between felony and non-felony cases (and *not* between ordinance violations and other types of violations), it must be said defendants were (to adapt *Paskuly*, 646 F.2d at 1211 to this case) "thereby on notice that [they] might be required to defend [their strip-search] practices from charges of class-based discrimination."

And as for any argument that Doe is somehow disabled as a class representative for misdemeanor offense arrestees, defendants' entire edifice collapses for lack of any foundation. If misdemeanor arrestees had in fact been treated any differently from ordinance violators, Doe could not of course be a class representative for the former group. But where Calumet City's strip-search practice applied to and was assertedly unconstitutional as to all *non-felony* arrestees, it is absurd to contend that someone in Doe's position—having been a victim of the practice—lacks either standing or a live case or controversy to speak for the entire class.

## Conclusion

This Court's prior certification of the plaintiff class is modified only by substitut-

---

**3.** Defendants say Illinois law distinguishes between ordinance violations (though criminal in nature) and criminal misdemeanor charges, pointing to (1) Ill.Rev.Stat. ch. 24, ¶ 11–1–1 and ch. 85, ¶ 2901 as to the former and (2) Ill.Rev. Stat. ch. 38, ¶¶ 2–11 and 2–12 as to the latter. This Court need not evaluate that contention in light of the conclusion reached here.

ing a starting date of April 17, 1985 in place of April 17, 1982. Appropriate notices shall promptly be sent to all putative class members who are now excluded from this action. In all other respects defendants' motion for class modification is denied.

## ON MOTION FOR RECONSIDERATION

This Court's September 19, 1989 memorandum opinion and order (the "Opinion") dealt with the statute-of-limitations questions in this 42 U.S.C. § 1983 ("Section 1983") class action in light of the interaction between two legal principles:

 1. the confirmation in *Kalimara v. Illinois Department of Corrections,* 879 F.2d 276, 277 (7th Cir.1989) of a two-year rather than five-year limitation period for Illinois-based Section 1983 actions and

 2. the relation-back concept of Fed.R. Civ.P. ("Rule") 15(c) as applied by our Court of Appeals in *Paskuly v. Marshall Field & Co.,* 646 F.2d 1210, 1211 (7th Cir.1981) (per curiam).

Counsel for the plaintiff class then swiftly moved for reconsideration of one aspect of the Opinion, based on a factor that had not been advanced in the parties' original briefing on the issues.

Defense counsel have objected to such reconsideration, not so much on substantive as on purely procedural grounds. But this fits one of the limited categories in which a motion for reconsideration ought to be favorably entertained—the situation in which the court "has made an error not of reasoning but of apprehension" (*Above the Belt, Inc. v. Mel Bohannan Roofing, Inc.,* 99 F.R.D. 99, 101 (E.D.Va.1983)). Although plaintiff class counsel may perhaps be faulted for not having identified the now-newly-advanced issue the first time around, it would be unjust to affect such a large group of class claimants adversely by reason of that omission.

What counsel has now accurately pointed out is that the April 17, 1987 filing date of the original individual Complaint in this action coincided precisely with the last day that a five-year statute of limitations for Illinois-grounded Section 1983 actions ap-

plied under *Anton v. Lehpamer,* 787 F.2d 1141 (7th Cir.1986). For nearly a decade before *Wilson v. Garcia,* 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985) the established Seventh Circuit law had uniformly applied the five-year limitations period (see *Beard v. Robinson,* 563 F.2d 331, 336 (7th Cir.1977) and its progeny). For that reason the Court of Appeals determined in *Anton,* 787 F.2d at 1146 that for a two-year window period post-*Wilson,* it would continue to apply the five-year timetable rather than the shorter two-year period called for by *Wilson.* Because *Wilson* was decided April 17, 1985, that window period expired April 17, 1987—exactly the day on which Jane Doe filed her Complaint here.

Accordingly the Opinion *is* modified to provide that the relation-back period measured from April 17, 1987 must go back to April 17, *1982* rather than to April 17, 1985. Because that brings us back to the place of beginning (see this Court's earlier opinion at 707 F.Supp. 343, 345 (N.D.Ill.1989)), there is no need to modify this Court's prior certification of the plaintiff class or to transmit any corrective notices to class members. Defendants' earlier motion for class modification is denied in its entirety.